**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| K.K-M., individually and as Kinship Legal Guardian of the minor children A.W. and R.M., | ) ) ) |
| | ) **Case No.** |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| **GLOUCESTER CITY BOARD OF EDUCATION d/b/a GLOUCESTER CITY PUBLIC SCHOOLS,** | ) **Judge** ) ) **Magistrate** ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

NOW COME Plaintiffs K.K-M.[1], individually and as Kinship Legal

Guardian of the minor children A.W. and R.M.[2] ("Plaintiffs"), by and through

counsel, and for their Complaint against Defendant Gloucester City Board of

Education d/b/a Gloucester City Public Schools ("GCPS") hereby state as follows:

## Introduction

This action is an appeal of the Final Decision entered by Administrative Law

Judge Jeffrey N. Rabin ("ALJ Rabin") on June 25, 2019 in the consolidated special

---

[1] Plaintiff K.K-M is so identified pursuant to Fed.R.Civ.P. 5.2 and to protect the minor Plaintiffs, for which she is the Kinship Legal Guardian.

[2] Plaintiffs A.W. and R.M. are so identified pursuant to Fed.R.Civ.P. 5.2(a)(3).

education administrative matters captioned *K.K-M. o/b/o A.W. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 8360-18, *K.K-M. o/b/o R.M. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 8361-18, *K.K-M. o/b/o A.W. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 9245-18, and *K.K-M. o/b/o R.M. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 9247-18 ("DP Case #2") pursuant to 20 U.S.C. §1415(i)(2)(A); N.J.A.C. §6A:14-2.7(v).

The appeal is timely filed as it is within the ninety (90) day limitation.  *See* 20 U.S.C. §1415(i)(2)(B); N.J.A.C. §6A:14-2.7(v)(1).

**<u>Parties</u>**

1.      A.W. is a child with a disability, primary diagnosis of Other Health Impairment – Diabetes.  A.W. has other learning disabilities, making her eligible for special education and related services under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. ("IDEA") and protection under Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("§504"); the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA"); New Jersey's Special Education Law, N.J.S.A. 18A:46-1 *et seq.*; and the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et. seq.* ("NJLAD").

2.      R.M. is a child with a disability, primary diagnosis of Other Health Impairment – other medical condition.  R.M. has other learning disabilities,

making her eligible for special education and related services under IDEA and protection under §504; the ADA; New Jersey's Special Education Law; and the NJLAD.

3.     K.K-M. is A.W.'s and R.M.'s Kinship Legal Guardian ("KLG") and resides with the children at 115 Bradley Court, Laurel Springs, Camden County, New Jersey.

4.     Defendant Gloucester City Board of Education d/b/a Gloucester City Public Schools ("GCPS") is a Local Educational Agency ("LEA") as that term is defined by 20 USC §1401(19) and 34 CFR §300.28 and a public agency of the State of New Jersey with its principal place of business located at 520 Cumberland Street, Gloucester City, Camden County, New Jersey 08030.  GCPS is a public school system in the State of New Jersey and an arm of the New Jersey Department of Education and, upon information and belief, receives federal funding.  As such, it is responsible for ensuring compliance with all mandates arising under the numerous federal statutes for providing special education to the school age students residing within its district.

**Jurisdiction and Venue**

5.     The Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction 28 U.S.C. §1331, premised upon IDEA, 20 U.S.C. §1415(i)(3)(A).

6.      Plaintiffs have exhausted their administrative remedies pursuant to 20 U.S.C. §1415(l) because ALJ Rabin's 6/25/19 Decision in the DP Case #2 is a final decision pursuant to 20 U.S.C. §1415(i)(1)(A).

7.      The Court has personal jurisdiction over the Defendant because it is a resident of the State of New Jersey.

8.      Venue is proper pursuant to 28 U.S.C. §1391 as all the events giving rise to the claims herein occurred in this District.

**Factual Background**

9.      On May 16, 2017, Judgments were entered in the cases captioned *Kinship Matter of A.W.*, Superior Court of New Jersey, Chancery Division – Family Part, Camden County, Docket No. FL-04-164-17 and *Kinship Matter of R.M.*, Superior Court of New Jersey, Chancery Division – Family Part, Camden County, Docket No. FL-04-165-17 granting K.K-M. Kinship Legal Guardianship ("KLG") over A.W. and R.M.

10.     KLG status grants K.K-M. the authority to make education decisions and act on behalf of A.W. and R.M.

11.     In November 2017, K.K-M. on behalf of A.W. and R.M. filed separate Requests for Due Process Hearings[3] invoking the 'Stay Put' rule under IDEA.

12.     The 'Stay Put' rule a/k/a "pendent placement" is a provision of IDEA that reads in pertinent part: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."  20 U.S.C. §1415(j) (emphasis added.)

13.     The Stay Put rule operates like "an automatic preliminary injunction.'" *M.R. v. Ridley School Dist.*, 744 F. 3d 112, 117 (3rd Cir. 2014) *cert. denied*, No. 13-1547, 2015 WL 2340858 (S.Ct. May 18, 2015), *citing Drinker by Drinker v. Colonial School Dist.*, 78 F. 3d 859, 864 (3rd Cir. 1996).

14.     The rule reflects Congress's conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved.  *M.R.*, 744 F. 3d at 117 (emphasis added.)

---

[3] These separate Due Process Hearings, captioned *K.K-M. o/b/o A.W. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 18462-17,  *K.K-M. o/b/o R.M. v. Gloucester City Board of Education*, OAL Dkt. No. 18461-17 ("DP Case #1"), are still pending before ALJ Lisa James-Beavers awaiting a Final Decision as the hearings have closed and closing briefs submitted on December 19, 2018.

15.    To determine what is the current educational placement, the 3rd Circuit has looked to the Individualized Education Program ("IEP") actually functioning when stay put is invoked.  *M.R.*, 744 F. 3d at 118.

16.    A.W. has an IEP dated March 29, 2017, issued by GCPS.

17.    R.M. has an IEP dated May 15, 2017, issued by GCPS.

18.    When 'Stay Put' was invoked in the November 2017 administrative complaints, A.W.'s 3/29/17 IEP and R.M.'s 5/15/17 IEP were the IEPs actually functioning.

19.    No new IEPs for A.W. or R.M. have been agreed to since the filing of the November 2017 complaints.

20.    A.W.'s 3/29/17 IEP and R.M.'s 5/15/17 IEP are their respective "pendent placements" or 'Stay Put' IEPs under IDEA.

21.    After ascertaining a student's current educational placement, the parents are entitled to an Order maintaining that placement without satisfaction of the usual prerequisites to injunctive relief.  *M.R.*, 744 F. 3d at 118.

22.    The 3rd Circuit held that 'Stay Put' applies through all proceedings, appellate reviews, and remands (should such occur) until complete resolution of the claims, even if parents do not ultimately prevail on the merits.  *M.R.* 744 F.3d at 112.

23.     Until completion of all the pending special education proceedings, including any appeals and remands therefrom, Defendant GCPS must maintain A.W.'s 3/29/17 IEP and R.M.'s 5/15/17 IEP.

24.     Under 'Stay Put', it is irrelevant which school district is the LEA because the Third Circuit has held that placement cannot be changed if it is "<u>likely to affect in some significant way the child's learning experience</u>." *DeLeon v. Susquehanna Community School Dist.*, 747 F. 2d 149, 153 (3rd Cir. 1984) (emphasis added.)

25.     Even if GCPS is not the LEA, they still have the legal obligation to maintain and implement the 'Stay Put' IEPs of A.W. and R.M.  If another school district is the LEA for A.W. and R.M., GCPS may seek reimbursement for the costs of implementing their 'Stay Put' IEPs from the other school district.  *See* 20 U.S.C. §§1413(a) and (e).  But GCPS may not change A.W.'s or R.M.'s educational placement in the interim.

26.     On November 18, 2017, Plaintiffs, by and through counsel, issued a request for documents to GCPS pursuant to IDEA, 20 U.S.C. §1415(b)(1), 34 C.F.R. §§300.501(a) and 300.613; the Family Educational Rights and Privacy Act, 20 U.S.C. §§1232g and 1232h, 34 C.F.R. §99.1 *et seq.* ("FERPA"); and New Jersey law, N.J.A.C. §§6A:32 and 6A:14-2.9 (hereinafter "Document Request").

27.     GCPS did not comply with the Document Request.

28.     In DP Cases #1, ALJ Beavers ordered GCPS to fund several Independent Educational Evaluations ("IEEs")  for A.W. and R.M.

29.     While the IEEs were being conducted, GCPS attempted to interfere with them by conducting its own evaluations of A.W. and R.M.

30.     GCPS attempted to schedule and then held "reevaluation meetings" without the consent of and over objections by K.K-M.

31.     As a result, GCPS interfered with the IEEs conducted for A.W. and R.M. with the intent of skewing the results of the IEEs and/or causing emotional stress on A.W. and R.M. and thereby K.K-M. so that Plaintiffs would give up on DP Case #1.

**Procedural History**

32.     On May 14, 2018, Plaintiffs filed Due Process Complaints against GCPS for the failure to comply with the Document Request in violation of IDEA.

33.     These disputes did not resolve during the 30-day resolution period and were transmitted to the New Jersey Office of Administrative Law on June 13, 2018 as captioned *K.K-M. o/b/o A.W. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 8360-18 and  *K.K-M. o/b/o R.M. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 8361-18.

34.     On May 29, 2018, Plaintiffs filed Due Process Complaints against GCPS for interfering with the IEEs and violating IDEA by trying to have competing evaluations.

35.     These disputes did not resolve during the 30-day resolution period and were transmitted to the New Jersey Office of Administrative Law on June 28, 2018 as captioned *K.K-M. o/b/o A.W. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 9245-18 and *K.K-M. o/b/o R.M. v. Gloucester City Board of Education*, OAL Dkt. No. EDS 9247-18.

36.     The four cases were consolidated before ALJ Rabin and the parties filed respective motions for summary disposition, which were all fully briefed by October 2, 2018.

37.     ALJ Rabin repeatedly adjourned the consolidated cases for numerous months, each time claiming that he would issue his decision on the motions for summary disposition.

38.     On June 25, 2019 – <u>266 days</u> after the motions for summary disposition were fully briefed, ALJ Rabin issued his Final Decision Granting Respondent's Motion for Summary Decision and Denying Petitioner's [sic] Cross-Motion for Summary Disposition.  (A true and correct copy of the 6/25/19 Final Decision is attached hereto as Exhibit A.)

**Statutory Framework**

*A. Guaranteed Legal Rights / FAPE*

39.    IDEA guarantees that every child with a disability receives a Free Appropriate Public Education ("FAPE") from his/her public school if that school receives federal funding.  20 U.S.C. §1412(a)(1)(A); 34 C.F.R. §300.101(a).

40.    The U.S. Supreme Court has defined FAPE as: "If [progressing smoothly through the regular curriculum] is not a reasonable prospect for a child, his IEP need not aim for grade-level advancement. But his educational program must be <u>appropriately ambitious in light of his circumstances</u>, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives. . . . [T]his standard is <u>markedly more demanding than the 'merely more than de minimis' test</u>." *Endrew F. v. Douglas County School Dist.*, 137 S.Ct. 988, 1000, 197 L. Ed. 2d 335 (2017) (emphasis added.)

41.    IDEA guarantees parents and their child with a disability numerous legal rights identified as "Procedural Safeguards".  *See* 20 U.S.C. §1415; 34 C.F.R. §§300.500-520.

42.    The U.S. Supreme Court has held that it is not only the child with the disability that has legal rights under IDEA, but the parents are also entitled to

assert legal rights on their own behalf under IDEA.  *Winkelman v. Parma City School Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 1996 (2007).

43.     §504 states that no "qualified individual with a disability" may be discriminated against as a result of his or her disability.  29 U.S.C. §794(a); 34 C.F.R. §104.4 (the statute uses the term "disability" whereas the regulations use the term "qualified handicapped person").

44.     The ADA extended the same protections given to other classes of people (race, creed, gender, age) to "individuals with disabilities" to ensure non-discrimination.  42 U.S.C. § 12132; 28 C.F.R. §35.101.

45.     Failure to provide FAPE to a child with a disability is discrimination and, therefore, a violation of §504 and the ADA.  *See, e.g., Ridgewood Bd. of Educ. v. NE for ME,* 172 F. 3d 238 (3rd Cir. 1999)*; Mark H. v. Department of Educ., State of Hawaii*, 620 F.3d 1090 (9th Cir. 2010); *Mark H. v. Lemahieu*, 513 F. 3d 922, 934 (9th Cir. 2008) ("Congress has clearly expressed its intent that remedies be available under Title V of the Rehabilitation Act for acts that also violate the IDEA.")

## B. Documents

46.     IDEA requires that a parent be given "[a]n opportunity for the parents of a child with a disability to examine <u>all records</u> relating to such child."  20 U.S.C. §1415(b)(1); 34 C.F.R. §300.501(a) ("The parents of a child with a disability must

be afforded, in accordance with the procedures of §§ 300.613 through 300.621, an opportunity to inspect and review all education records with respect to - (1) The identification, evaluation, and educational placement of the child; and (2) The provision of FAPE to the child"); *see* N.J.A.C. §6A:14-2.9(b).

47.     IDEA regulations provide in pertinent part: "Each participating agency must permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency under this part. The agency must comply with a request <u>without unnecessary delay and before any</u> <u>[IEP meeting], or any [Due Process hearing], or resolution session</u> . . . and <u>in no</u> <u>case more than 45 days after the request has been made</u>."  34 C.F.R. §300.613(a) (emphasis added.)

48.     The IDEA regulations further provide: "The right to inspect and review education records under this section includes - The right to a response from the participating agency to reasonable requests for explanations and interpretations of the records; the right to request that the agency provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records; and the right to have a representative of the parent inspect and review the records."  34 C.F.R. §300.613(b).

49. A school district "must provide parents on request a list of the types and locations of education records collected, maintained, or used by the agency." 34 C.F.R. §300.616.

50. The New Jersey Department of Education "must have in effect the policies and procedures, including sanctions that the State uses, to ensure that its policies and procedures [of these regulations] are followed and that the requirements of the Act and the regulations in this part are met." 34 C.F.R. §300.626.

51. Further, New Jersey Administrative Code provides the following: "All student records shall be maintained according to N.J.A.C. 6A:32." N.J.A.C. §6A:14-2.9(a).

52. "Student records shall contain only such information as is relevant to the education of the student and is objectively based on the personal observations or knowledge of the certified school personnel who originate(s) the record." N.J.A.C. §6A:32-7.1(c).

53. "The parent or adult student shall have access to his or her own records and have access to or be specifically informed about only that portion of another student's record that contains information about his or her child or himself or herself." N.J.A.C. §6A:32-7.1(f).

54.    "School districts may store all documents either <u>electronically</u> or in paper format." N.J.A.C. §6A:32-7.4(b) (clearly contemplating electronic storage of information, including without limitation emails); *see also, Owasso Indep. Sch. Dist. v. Falvo*, 122 S.Ct. 934 (2002), emphasizing the point that information may be stored in a "permanent secure database," which would include emails.

55.    Failure of a school district to secure or backup emails is in violation of New Jersey code. "When records are stored electronically, proper security and backup procedures shall be administered."  N.J.A.C. §6A:32-7.4(b)(1).

56.    The parents of a child with a disability are mandatory members of the IEP Team.  20 U.S.C. §1414(d)(1)(B)(i); 34 C.F.R. §300.321(a)(1).  Indeed, "the concerns of the parents for enhancing the education of their child" is critical in developing the child's IEP.  20 U.S.C. §1414(d)(3)(A)(ii); 34 C.F.R. §300.324(a)(1)(ii); *see also Honig v. Doe*, 484 U.S. 305 (1988); *Schaffer v. Weast*, 546 U.S. 49, 53, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) (Parents play "a significant role" in the development of each child's IEP.)

57.    Therefore, parents' access to these records is vital to their opportunity to participate in the decision-making process regarding the provision of FAPE to the child.

*C. Evaluations*

58.     In order to provide appropriate special education and related services to a child, evaluations must be done properly and in accordance with IDEA.  20 U.S.C. §§1414(a) – (c).

59.     A school district or LEA has a legal obligation to identify children that have a disability that interferes with their education.  20 U.S.C. §1412(a)(3)(A); 34 C.F.R. §300.111(a)(1); 34 C.F.R. §303.302(b).

60.     IDEA requires that "reevaluation of each child with a disability is conducted . . . if the local educational agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation; or if the child's parents or teacher requests a reevaluation." 20 U.S.C. §1414(a)(2).

61.     Reevaluation must occur at least every three (3) years, <u>but not more than once a year</u>, unless the parents and school agree that reevaluation is not necessary.  20 U.S.C. §1414(a)(2)(B) (emphasis added.)

62.     IDEA sets forth very explicit procedures for conducting evaluations. *See* 20 U.S.C. §1414(b); *see also* N.J.A.C. §6A:14-3.4.

63.     A reevaluation involves "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent (to determine if there is a disability and what

will be necessary in an IEP); shall not use any single measure or assessment as the sole criterion for determining (disability or the education program); and use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors." 20 U.S.C. §1414(b)(2).

64.     A Child Study Team's ("CST") opinions do not constitute an "evaluation" under IDEA.

65.     Since GCPS had not reevaluated A.W. and R.M. for nearly four (4) years in violation of IDEA, GCPS waived its right to conduct its own reevaluations.  This was confirmed when ALJ Beavers ordered the IEEs.

66.     GCPS' attempt to circumvent ALJ Beavers' ruling and conduct its own evaluations showed its intent to skew the results of the IEEs and/or retaliate against Plaintiffs for enforcing the IEEs.

*D. Violations of IDEA / Legal Standards*

67.     "Any party aggrieved by the findings and decision made . . . under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. §1415(i)(2)(A).

68.     This Court "shall "receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. §1415(i)(2)(C).

69.     A court reviewing an ALJ's decision to determine if there is a substantive violation on FAPE must apply the "appropriately ambitious in light of his circumstances" standard.  *See, supra*, *Endrew F.*

70.     Violations of the IDEA Procedural Safeguards rise to the level of a denial of FAPE if the violations: "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." 20 U.S.C. §1415(f)(3)(E)(ii); N.J.A.C. § 6A:14-2.7;. *see also G.N. ex rel. J.N. v. Bd. of Educ.*, 309 Fed.Appx. 542, 545-546 (3rd Cir. 2009).

71.     In cases arising under the IDEA, there is a "modified *de novo*" standard of review "giv[ing] `due weight' and deference to the findings in the administrative proceedings."  *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3rd Cir. 2009).

72.     Factual findings from the administrative proceedings are to be considered prima facie correct and if a reviewing court does not adhere to those

findings, it must "explain why." *DK v. Abington School Dist.*, 696 F. 3d 233, 243 (3rd Cir. 2012) *citing P.P., supra*.

73.    Conclusions of law are subject to plenary review. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3rd Cir. 2010).

*E. Attorney's Fees and Costs*

74.    IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. §1415(i)(3)(B)(i)(I).

75.    "In order to be a 'prevailing party,' a party must be 'successful' in the sense that it has been awarded some relief by a court." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3rd Cir. 2006) *quoting Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 and 435 (1983) ("Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee."). The relief awarded must constitute a "change in the legal relationship of the parties" that is "judicially sanctioned." *Buckhannon*, 532 U.S. at 605; *P.N.*, 442 F.3d at 853.

76.     Similarly, reimbursement of attorneys' fees and costs is available under §504 and the ADA, as well.  29 U.S.C. §794a(b) [§504]; 42 U.S.C. §12133 [ADA].

## COUNT ONE
### (Appeal – Legal Error on Obligation to Provide FAPE)

77.     Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

78.     ALJ Rabin erred by holding that GCPS "was no longer responsible for providing A.W. and R.M. with FAPE."  (Exhibit A, p. 7.)

79.     Conclusions of law in special education are subject to *de novo* review. *Blunt v. Lower Merion School Dist.*, 767 F. 3d 247, 265 (3rd  Cir. 2014).

80.     Since the present disputes arose from DP Case #1 and the violation of Procedural Safeguards, GCPS still had the obligation to provide FAPE to Plaintiffs.

81.     Plenary review of this error of law will reveal that GCPS was still obligated to provide FAPE during the school years at issue and because of 'stay put'.

82.     Which school district is responsible to provide FAPE is irrelevant under IDEA's requirement that parents have access to their child's education records.

83.    Further, if GCPS did not have the obligation to provide FAPE, it was an additional violation of IDEA for GCPS to have a reevaluation meeting and attempt to conduct reevaluations of A.W. and R.M. and interfere with the IEEs.

WHEREFORE, Plaintiffs, demand that this honorable Court enter an Order in their favor and against Defendants as follows:

A.    Find that ALJ Rabin erred in his legal conclusions that GCPS did not owe A.W. and R.M. a FAPE;

B.    Finding that, regardless of who has obligation to provide FAPE, GCPS violated IDEA by failing to provide K.K-M. with proper access to the education records of A.W. and R.M.;

C.    Finding that, regardless of who has obligation to provide FAPE, GCPS violated IDEA's procedural safeguards by interfering with ALJ-ordered IEEs by having a reevaluation meeting and attempting to conduct its own evaluations;

D.    Reversing ALJ Rabin's 6/25/19 Decision and finding by a preponderance of the evidence that GCPS violated IDEA's procedural safeguards, specifically requirements for providing Plaintiffs with access to documents, not to interfere with ALJ-ordered IEEs, and not to attempt to conduct reevaluations in violation of IDEA;

E.      Finding that GCPS' violation of these procedural safeguards impeded the A.W.'s and R.M.'s rights to a FAPE; significantly impeded the K.K-M.'s opportunity to participate in the decision-making process regarding the provision of FAPE to A.W. and R.M.; and/or caused a deprivation of educational benefits to A.W. and R.M.;

F.      Granting such relief as this Court deems appropriate;

G.      Granting Plaintiffs an award of attorney's fees and costs; and

H.      Such other and further relief as this Court deems equitable and just.

## COUNT TWO
### (Appeal – Legal Error on 'Stay Put')

84.     Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

85.     ALJ Rabin erred by finding that Plaintiffs "failed to show that 'stay-put' was applicable to the within set of circumstances."  (Exhibit A, p. 7.)

86.     Conclusions of law in special education are subject to *de novo* review. *Blunt v. Lower Merion School Dist.*, 767 F. 3d 247, 265 (3rd  Cir. 2014).

87.     U.S. Circuit Judge Patty Shwartz of the Third Circuit granted a temporary injunction on October 11, 2018 prohibiting GCPS "from disenrolling R.M. and A.W. from its school" and referring the motion "to allow a full panel of this Court the opportunity to review and consider" full briefing on the issue.

88.     On May 16, 2019, counsel for GCPS filed a letter via the ECF/CM system with this Court in the case captioned *K.K-M., et al. v. New Jersey Department of Education, et al.*, U.S.D.C. D.N.J. Civil No. 1:17-cv-11579, stating "it continues to be the District's intention to permit [A.W. and R.M.] to remain enrolled through the conclusion of the 2019-2020 school year."

89.     This letter was never withdrawn, corrected, or modified, except by a verbal statement by counsel before U.S. District Judge Robert B. Kugler on July 1, 2019, and is therefore an admission against interest.  FRE 804(b)(3).

90.     It is undisputed that both the 3rd Circuit required and GCPS conceded that A.W. and R.M. would remain at GCPS through the 2018-19 school year and therefore were in 'Stay Put' from November 2017 through June 2019.

WHEREFORE, Plaintiffs, demand that this honorable Court enter an Order in their favor and against Defendants as follows:

A.     Find that ALJ Rabin erred in his legal conclusions that 'Stay Put' did not apply;

B.     Finding that 'Stay Put' did indeed apply to keep A.W. and R.M. enrolled at GCPS and that GCPS had the obligation to provide a FAPE to the children because of 'Stay Put';

C.     Reversing ALJ Rabin's 6/25/19 Decision and finding by a preponderance of the evidence that GCPS violated IDEA's procedural

safeguards, specifically requirements for providing Plaintiffs with

access to documents, not to interfere with ALJ-ordered IEEs, and not

to attempt to conduct reevaluations in violation of IDEA;

D.      Finding that GCPS' violation of these procedural safeguards impeded

the A.W.'s and R.M.'s rights to a FAPE; significantly impeded the

K.K-M.'s opportunity to participate in the decision-making process

regarding the provision of FAPE to A.W. and R.M.; and/or caused a

deprivation of educational benefits to A.W. and R.M.;

E.      Granting such relief as this Court deems appropriate;

F.      Granting Plaintiffs an award of attorney's fees and costs; and

G.      Such other and further relief as this Court deems equitable and just.

## <u>COUNT THREE</u>
### (Appeal – Legal Error on Summary Disposition)

91.     Plaintiffs repeat and reallege the preceding allegations of this

Complaint and incorporate them herein by reference as if set forth in full.

92.     A reviewing court exercises "plenary review over summary judgment

and [applies] the same standard that the lower court should have applied." *Farrell*

*v. Planters Lifesavers Co.*, 206 F. 3d 271, 278 (3rd Cir. 2000); *see also Lauren W.*

*Ex Rel. Jean W. v. DeFlaminis*, 480 F. 3d 259, 265-266 (3rd Cir. 2007) (in review

of summary judgments in IDEA cases.)

93.     A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); N.J.A.C. §1 :1-12.5(b); *Lauren W.*, *supra*.

94.     In making this determination, a court must view "the facts in the light most favorable to the non-moving part[y] and draw all reasonable factual inferences in [that party's] favor." *Lauren W.*, 480 F. 3d at 266.

95.     ALJ Rabin stated "Both parties have filed motions for summary disposition in this matter, and therefore both parties are in agreement that there are no genuine issues of fact which would require a full due process hearing." (Exhibit A, p. 5.)

96.     Parties filing their own separate motions for summary disposition is not the proper standard to use in determining whether there is a genuine dispute of material fact.  The motion judge must make his/her own independent evaluation of such determination.  *See, e.g., Brill v. Guardian Life Ins. Co. of Am.*, 142 N.J. 520, 540 (1995) ("determination whether there exists a 'genuine issue' of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to

resolve the alleged disputed issue in favor of the non-moving party"); *Lauren W.*,

*supra*.

97.     ALJ Rabin did not view the facts in the light most favorable to

Plaintiffs nor drew all inferences in their favor.  Instead, ALJ Rabin simply

adopted the ruling by ALJ Beavers (*see* Exhibit A, p. 7) and never addressed the

issues in the case, namely, violations of the procedural safeguards of IDEA for

failure to provide access to documents and interfering with IEEs.

WHEREFORE, Plaintiffs, demand that this honorable Court enter an Order

in their favor and against Defendants as follows:

A.     Find that ALJ Rabin erred in his application and analysis of the

summary disposition standard;

B.     Find that ALJ Rabin erred by entering summary judgment in favor of

GCPS and against Plaintiffs by viewing the facts in the light most

favorable to the moving party, GCPS, and failing to draw all

inferences in Plaintiffs' favor;

C.     Finding that ALJ Rabin erred by never addressing the substantive

issues in the case;

D.     Reversing ALJ Rabin's 6/25/19 Decision and finding by a

preponderance of the evidence that GCPS violated IDEA's procedural

safeguards, specifically requirements for providing Plaintiffs with

access to documents, not to interfere with ALJ-ordered IEEs, and not to attempt to conduct reevaluations in violation of IDEA;

E.  Finding that GCPS' violation of these procedural safeguards impeded the A.W.'s and R.M.'s rights to a FAPE; significantly impeded the K.K-M.'s opportunity to participate in the decision-making process regarding the provision of FAPE to A.W. and R.M.; and/or caused a deprivation of educational benefits to A.W. and R.M.;

F.  Granting such relief as this Court deems appropriate;

G.  Granting Plaintiffs an award of attorney's fees and costs; and

H.  Such other and further relief as this Court deems equitable and just.

## COUNT FOUR
### (Failure to Provide A.W. and R.M. a FAPE)

98.  Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

99.  Plaintiffs further incorporate the administrative record by reference herein and such additional evidence as is necessary as per IDEA.

100.  GCPS denied A.W. and R.M. a FAPE as follows:

a.  Seriously depriving K.K-M. of her parental participation rights by not providing all records relating to A.W. and R.M.;

b.  Impeding A.W.'s and R.M.'s rights to a FAPE;

c.      Causing a deprivation of educational benefits to A.W. and R.M.;

d.      Failing to provide all documents as requested by Petitioners pursuant to IDEA, FERPA, and New Jersey law;

e.      Failure to comply with IDEA and New Jersey law on document requests pursuant to IDEA, FERPA, and New Jersey law;

f.      Systemically failing to adhere to NJDOE policies and procedures for compliance with IDEA and New Jersey law;

g.      Holding an "Identification Evaluation Plan meeting" when there is no basis for such in IDEA or the New Jersey special education regulations;

h.      Holding an IEP meeting without K.K-M. present;

i.      Seriously depriving K.K-M. of her parental participation rights by holding an improper meeting despite K.K-M.'s protests over such;

j.      Intentionally violating and attempting to circumvent ALJ Beavers' 4/17/18 Order;

k.      Attempting to conduct its own evaluations within the same year as the IEEs in violation of IDEA;

l. Attempting to conduct its own evaluations within the same year as the IEEs with the intent of skewing the results of the IEEs and/or harass A.W. and R.M. during the evaluation process; and

m. Failure to comply with IDEA and New Jersey law on reevaluations.

101. GCPS' violations of IDEA procedural safeguards impeded A.W.'s and R.M.'s rights to a FAPE; significantly impeded the K.K-M.'s opportunity to participate in the decision-making process regarding the provision of FAPE to A.W. and R.M.; and caused a deprivation of educational benefits to A.W. and R.M.

WHEREFORE, Plaintiffs, demand that this honorable Court enter an Order in their favor and against Defendants as follows:

A. Vacating and/or reversing ALJ Rabin's 6/25/19 Decision and finding by a preponderance of the evidence that GCPS violated IDEA's procedural safeguards, specifically requirements for providing Plaintiffs with access to documents, not to interfere with ALJ-ordered IEEs, and not to attempt to conduct reevaluations in violation of IDEA;

B. Finding that GCPS' violation of these procedural safeguards impeded the A.W.'s and R.M.'s rights to a FAPE; significantly impeded the K.K-M.'s opportunity to participate in the decision-making process

regarding the provision of FAPE to A.W. and R.M.; and/or caused a

deprivation of educational benefits to A.W. and R.M.;

C.     Granting such relief as this Court deems appropriate;

D.     Granting Plaintiffs an award of attorney's fees and costs; and

E.     Such other and further relief as this Court deems equitable and just.

## COUNT FIVE
### (Violation of §504)

102.   Plaintiffs repeat and reallege the preceding allegations of this

Complaint and incorporate them herein by reference as if set forth in full.

103.   A.W. and R.M. each have a "disability" as defined in §504 which are

medical and mental impairments which substantially limit one or more of their

major life activities, including but not limited to learning and communicating.  29

U.S.C. §705(20)(B).

104.   A.W. and R.M. are each an "individual with a disability" within the

meaning of §504 because their diagnoses substantially limit his ability to learn,

communicate, and be educated.  29 U.S.C. §705(20)(A); 34 C.F.R. §104.3(j).

105.   A.W. and R.M. are entitled to the protections against discrimination as

provided by §504 and shall not, by reason of their disabilities, be excluded from

participation in or be denied the benefits of the services, programs, or activities of

a public entity, or be subjected to discrimination by any such entity. 29 U.S.C.

§794(a); 34 C.F.R. §§104.4, 104.31 and 104.33.

106.    Upon information and belief during all relevant time periods herein, GCPS received federal funds to operate as a public facility providing education to the residents within its jurisdiction.

107.    GCPS knew of A.W. and R.M.'s disabilities because of their IEPs and supporting documentation provided by Plaintiffs, which requires a determination of eligibility of a child with a disability.

108.    By its actions and/or inactions in denying equal access to educational services, including but not limited to a denial of FAPE to A.W. and R.M., and by subjecting A.W. and R.M. to a hostile and dangerous educational environment, GCPS violated A.W. and R.M.'s rights under §504 and the regulations promulgated thereunder.

109.    GCPS violated A.W. and R.M.'s §504 rights as follows:

    a.    Failure to provide A.W. and R.M. with a FAPE;

    b.    Failure to follow IDEA law and its regulations on access to documents and reevaluations;

    c.    Failure to follow OSERS guidance on access to documents and reevaluations;

    d.    Intentional and willful refusal to provide K.K-M. with access to the education records of A.W. and R.M.;

e.    Intentional and willful interference with the IEEs for A.W. and
      R.M.;

f.    Failure to provide equal opportunities in education for A.W.
      and R.M. compared to his neuro-typical peers;

g.    Discriminating against A.W. and R.M. because of their
      disabilities; and

h.    Any other violations that may be disclosed by careful review of
      the administrative record and supplemental discovery.

110.    Plaintiffs reserve their rights to assert any other violations of §504 that
resulted in discrimination by GCPS against A.W. and R.M.

111.    Retaliation by a school district when a parent or child with a disability
tries to enforce their rights under §504 is a violation of §504.  29 C.F.R. §33.13; 34
C.F.R. §100.7(e); 34 C.F.R. §104.61.

112.    K.K-M. began asserting the special education legal rights on behalf of
A.W. and R.M. prior to May 2017 and requesting various services from GCPS.

113.    GCPS' actions, including without limitation refusing K.K-M.'s access
to education records and interfering with the IEEs and reevaluation process,
occurred after K.K-M. filed the Due Process cases on behalf of A.W. and R.M., in
November 2017.

114.   GCPS did not begin legal action to remove A.W. and R.M. from its school district until December 2017, one month <u>after</u> Plaintiffs' filed their requests for due process hearings.

115.   GCPS sought to remove A.W. and R.M. from its school district as a cost-saving measure with reckless disregard to the children's special education and other legal rights.

116.   GCPS' actions, including without limitation refusing K.K-M.'s access to education records and interfering with the IEEs and reevaluation process, were in retaliation for K.K-M.'s assertion of the legal rights of A.W. and R.M., children with disabilities.

117.   GCPS also demoted K.K-M. in her job, moved her desk station into the hallway where no other security employees were located, false accused her of breaking protocol, and ultimately made her job environment so hostile that she had to take medical leave to address the stress brought on by GCPS' retaliation.

118.   By retaliating against Plaintiffs for asserting their legal rights for special education, GCPS violated §504 and the regulations promulgated thereunder with malice and reckless abandon.

119.   As a direct and proximate result of such discrimination and retaliation in violation of §504, Plaintiffs have been severely harmed.

WHEREFORE, Plaintiffs demand that this honorable Court enter Judgment against Defendants GCPS and NJDOE as follows:

A.  Compensatory damages in an amount in excess of $400,000.00;

B.  The relief requested in the Due Process cases;

C.  A mandate that GCPS implement policies to prevent and prohibit discrimination based on disability;

D.  That Plaintiffs are prevailing parties on the issues herein and therefore are entitled to reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees and costs; and

E.  Such other and further relief as this Court deems equitable and just.

## COUNT SIX
### (Violation of the ADA)

120.  Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

121.  The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et seq.* ("ADA") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

122.  Denial of FAPE to a child with a disability is discrimination and a violation of the ADA.  28 C.F.R. §35.130.

123.  The ADA also prohibits retaliation, coercion or threats against people who file complaints under the ADA.  42 U.S.C. §12203; 28 C.F.R. §35.134.

124.   A.W. and R.M. each have a "disability" that substantially limit one or more of their major life activities, including but not limited to learning and communicating, as set forth in the ADA. 42 U.S.C. §12102(1); 28 C.F.R. §35.104.

125.   A.W. and R.M. are each a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. §§12132 and 12182; 28 C.F.R. §§35.130 and 35.149.

126.   A.W. and R.M. are entitled to the protections against discrimination as provided by the ADA and shall not, by reason of their disabilities, be denied public accommodations or excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. §§12132, 12181 and 12182; 28 C.F.R. §§35.130 and 35.149.

127.   GCPS, like all educational facilities receiving federal funds, is a public accommodation. 42 U.S.C. §12181(7)(j).

128.   GCPS failed in its responsibilities under the ADA and the regulations promulgated thereunder to provide its services, programs and activities in a full and equal manner to A.W. and R.M., disabled children, as described hereinabove, including failure to ensure that educational services are provided on an equal basis to a child with a disability and free of hostility towards A.W.'s and R.M.'s disabilities.

129.   GCPS further failed in its responsibilities under the ADA to provide its services, programs and activities in a full and equal manner to A.W. and R.M., disabled children, as described hereinabove, by subjecting them to a hostile and dangerous educational environment.

130.   By denying A.W. and R.M. a FAPE as described above, GCPS has violated the ADA.

131.   GCPS further violated A.W.'s and R.M.'s legal rights under the ADA as follows:

a.     Failure to provide A.W. and R.M. with a FAPE;

b.     Failure to follow IDEA law and its regulations on access to documents and reevaluations;

c.     Failure to follow OSERS guidance on access to documents and reevaluations;

d.     Failure to adequately train its staff and providers regarding access to documents and reevaluations;

e.     Intentional and willful refusal to provide K.K-M. with access to the education records of A.W. and R.M.;

f.     Intentional and willful interference with the IEEs for A.W. and R.M.;

g.      Failure to provide equal opportunities in education for A.W. and R.M. compared to their neuro-typical peers;

h.      Discriminating against A.W. and R.M. because of their disabilities; and

i.      Any other violations that may be disclosed by careful review of the administrative record and supplemental discovery.

132.   Plaintiffs reserve their rights to assert any other violations of the ADA that resulted in discrimination by GCPS against A.W. and R.M.

133.   By retaliating against Plaintiffs, A.W. and R.M. violated Plaintiffs' legal rights under the ADA and the regulations promulgated thereunder with malice and/or reckless indifference.

134.   As a direct and proximate result of GCPS's failures to comply with the ADA and the regulations promulgated thereunder, Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter Judgment against Defendants GCPS and NJDOE as follows:

A.      Compensatory damages in an amount in excess of $800,000.00;

B.      The relief requested in the Due Process cases;

C.      A mandate that GCPS implement policies to prevent and prohibit discrimination based on disability;

D.     Finding that the actions of GCPS were willful, intentional and/or with reckless disregard to the rights of A.W. and R.M.;

E.     Punitive damages in an amount in excess of $1,500,000.00;

F.     Finding that Plaintiffs are prevailing parties on the issues herein and therefore are entitled to reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees and costs; and

G.     Such other and further relief as this Court deems equitable and just.

## <u>COUNT SEVEN</u>
## (Appeal – Other Errors by ALJ Rabin)

135.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

136.   ALJ Rabin found "these are issues that are still available for adjudication in the underlying due process matter which remains open at OAL before Judge Beavers."  (Exhibit A, p. 6.)

137.   ALJ Rabin stated "these four cases[4] filed by petitioner were duplicative of the underlying due process petition still before Judge Beavers." (Exhibit A, p. 7.)

---

[4] The reference to "four cases" is deceptive because the NJDOE requires a separate case filing for each child, A.W. and R.M., rather than one petition for both. Therefore, the reference should more properly be two cases for two children.

138.   By "underlying due process matter" ALJ Rabin is referring to DP Case #1 (*see fn.* 3 *supra*), which is before ALJ James-Beavers.

139.   DP Case #1 was filed on November 11, 2017 and then re-filed, after the NJDOE wrongfully dismissed it[5], on November 19, 2017.

140.   The due process cases that were before ALJ Rabin and subject of this suit were filed on May 14 and May 29, 2018 and later consolidated.

141.   The issues that arose in the cases before ALJ Rabin arose much later in DP Case #1.

142.   Under New Jersey special education due process law, "After a petition requesting a due process hearing is submitted to the Office of Special Education Programs, it may only be amended with the consent of the other party, or if an administrative law judge allows the party to amend the petition."  N.J.A.C. §6A:14-2.7(i).

143.   The petition(s) in DP Case #1 could not be amended to include the issues in the cases before ALJ Rabin because the case was too far along.  *See* N.J.A.C. §6A:14-2.7(i)(2).

144.   Thus, ALJ Rabin's finding on this issue is clear error.

---

[5] This issue is part of a separate case captioned *K.K-M., et al. v. New Jersey Department of Education, et al.*, U.S.D.C. D.N.J. Civil No. 1:17-cv-11579-RBK-KMW.

145.    ALJ Rabin found, "the relief sought by petitioner is for the Board to produce certain records requested by petitioner.  This does not fall under one of the enumerated topics for requesting a due process hearing."  (Exhibit A, p. 6.)

146.    IDEA provides eight (8) procedural safeguards to ensure compliance by school districts with federal law in order to receive federal funds for special education.  *See* 20 U.S.C. §§1415(b)(1) – (8) ("The <u>procedures required</u> by this section shall include the following. . . ."; emphasis added.)

147.    The very <u>first</u> of these procedural safeguards is "An opportunity for the parents of a child with a disability to <u>examine all records relating to such child</u> and to participate in meetings <u>with respect to the identification, evaluation, and educational placement of the child</u>, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child."  20 U.S.C. §1415(b)(1) (emphasis added.)

148.    Violations of IDEAs procedural safeguards are actionable and may be brought as the basis of a request for a due process hearing.  *See* 20 U.S.C. §1415(f)(3)(E)(ii) ("In matters alleging a procedural violation"); N.J.A.C. § 6A:14-2.7(k) ("In matters, alleging a procedural violation"); *see also G.N.*, *supra*.

149.    It is clear that Plaintiffs are entitled to bring a due process case for failure of Defendant to provide full access to the records of A.W. and R.M. as a violation of an IDEA procedural safeguard.

150.   Thus, ALJ Rabin's finding on this issue is clear error.

151.   ALJ Rabin accepted Defendant's argument that Plaintiffs should have brought this claim as a violation of the Family Education Rights and Privacy Act (FERPA).  (Exhibit A, p. 6.)

152.   ALJ Rabin further stated that "Petitioner has acknowledged that this is the proper course of action, and apparently sought relief from the FPCO.  It is clear that petitioner is unhappy with the long delays she is experiencing from FPCO . . . and therefore has chosen to file duplicative petitions with OAL, despite these issues being addressed in petitioner's [sic] underlying due process petition." (Exhibit A, pp. 6-7.)

153.   Plaintiffs are required to exhaust all administrative remedies for violations of IDEA.  *See* 20 U.S.C. §1415(l); *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-758 (2017) ("What matters is the crux — or, in legal-speak, the gravamen — of the plaintiff's complaint, setting aside any attempts at artful pleading" is about education of the child with a disability); *Batchelor v. Rose Tree Media School Dist.*, 759 F.3d 266 (3rd Cir. 2014).

154.   Plaintiffs need not comply with the IDEA's exhaustion requirements if "exhaustion would be futile or inadequate," if "the issue presented is purely a legal question," or if "the administrative agency cannot grant relief."  *AD v. Haddon*

*Heights Bd. of Educ.*, 90 F. Supp. 3d 326, 342 (D.N.J. 2015) *citing Komninos,* 13

F. 3d at 778; *see also W.B. v. Matula*, 67 F.3d 484, 493 (3rd Cir. 1995).

155.   Pursuit of remedies through FPCO was futile and inadequate because

the delays in enforcement resulted in Plaintiffs not having access to the education

records of A.W. and R.M. and could not, therefore, be addressed in DP Case #1.

156.   Plaintiffs still do not have complete access to the records held by

GCPS of A.W. and R.M.

157.   Further, the claims in the cases before ALJ Rabin are distinct

violations of IDEA's procedural safeguards from the issues presented in DP Case

#1.

158.   Thus, ALJ Rabin's finding on this issue is clear error.

159.   ALJ Rabin further found, "The determinative factor in the within

matter is that on August 28, 2018, it was determined in the related residency

appeal, K.K.M. [sic] o/b/o R.M. and A.W. v. Gloucester City Board of Education,

Dkt. No. EDU 2505-18, that petitioner was not domiciled in the Gloucester City

School District, and had not been since May 16, 2017, when petitioner obtained

Kinship Legal Guardianship over A.W. and R.M.   As the claims in the within

matter post-dated May 16, 2017, petitioner's claims cannot be sustained."  (Exhibit

A, p. 7.)

160.   The August 28, 2018 decision referenced by ALJ Rabin is currently on appeal with the New Jersey Appellate Division, *K.K-M., et al. v. Gloucester City Board of Education,* Case No. A0011589-18, which has not yet been fully briefed and no final decision has been issued by the court.

161.   The decision on residency is irrelevant because A.W. and R.M. attended GCPS by 'Stay Put' through the 2018-19 school year as a result of a temporary injunctive order by the Third Circuit and by agreement of GCPS, so that GCPS had the obligation to provide FAPE to A.W. and R.M. or, at a minimum, comply with the procedural safeguards through June 2019.

162.   A.W. and R.M. did not attend any school other than GCPS during the relevant timeframe of this case.

163.   The issues herein fell within the timeframe of 2018-2019.

164.   GCPS scheduled and held "reevaluation planning meetings" for A.W. and R.M. in May 2018, thereby admitting it had the obligation to provide A.W. and R.M. a FAPE for the 2018-19 school year.  *See* FRE 803(6) and 804(b)(3).

165.   Thus, ALJ Rabin's finding on this issue is clear error.

WHEREFORE, Plaintiffs, demand that this honorable Court enter an Order in their favor and against Defendants as follows:

A.     Finding that ALJ Rabin committed numerous clear errors of fact and
       errors in conclusions of law in his 6/25/19 Decision as set forth above;

B.    Vacating and/or reversing ALJ Rabin's 6/25/19 Decision and finding by a preponderance of the evidence that GCPS violated IDEA's procedural safeguards, specifically requirements for providing Plaintiffs with access to documents, not to interfere with ALJ-ordered IEEs, and not to attempt to conduct reevaluations in violation of IDEA;

C.    Finding that GCPS' violation of these procedural safeguards impeded the A.W.'s and R.M.'s rights to a FAPE; significantly impeded the K.K-M.'s opportunity to participate in the decision-making process regarding the provision of FAPE to A.W. and R.M.; and/or caused a deprivation of educational benefits to A.W. and R.M.;

D.    Granting such relief as this Court deems appropriate;

E.    Granting Plaintiffs an award of attorney's fees and costs; and

F.    Such other and further relief as this Court deems equitable and just.

**<u>COUNT EIGHT</u>**
**(Violation of the NJLAD)**

166.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

167.   The New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et seq.* ("NJLAD") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

168.   A.W. and R.M. each have a "disability" as a result of his several

diagnoses as defined in the New Jersey Law Against Discrimination ("NJLAD"),

N.J.S.A. §10:5-5(q).

169.   GCPS, like all educational facilities under the supervision of the

NJDOE and receiving federal funds, is "a place of public accommodation."

N.J.S.A. §10:5-5(l).

170.   A.W. and R.M. are entitled to the prohibitions against unlawful

discrimination as provided by the NJLAD and shall not, by reason of their

respective disabilities, be denied public accommodations or excluded from

participation in or be denied the benefits of the services, programs, or activities of

GCPS or be subjected to discrimination by any such entity. N.J.S.A. §10:5-12.

171.   In addition, under NJLAD, public schools and its employees are

barred from discriminating on the basis of a person's disability.

172.   GCPS failed in its responsibilities under the NJLAD to provide its

services, programs and activities in a full and equal manner to A.W. and R.M.,

disabled children, as described hereinabove, including failure to ensure that

educational services are provided on an equal basis to children with disabilities and

free of hostility towards A.W.'s and R.M.'s disabilities.

173.   GCPS further failed in its responsibilities under the NJLAD to provide

its services, programs and activities in a full and equal manner to A.W. and R.M.,

disabled children, as described hereinabove, by subjecting them to a hostile and dangerous educational environment.

174.   GCPS further violated A.W.'s and R.M.'s legal rights under the NJLAD as follows:

a.   Failure to adequately train its staff and providers regarding access to documents and reevaluations;

b.   Intentional and willful refusal to provide K.K-M. with access to the education records of A.W. and R.M.;

c.   Intentional and willful interference with the IEEs for A.W. and R.M.;

d.   Failure to provide equal opportunities in education for A.W. and R.M. compared to their neuro-typical peers;

e.   Discriminating against A.W. and R.M. because of their disabilities; and

f.   Any other violations that may be disclosed by careful review of the administrative record and supplemental discovery.

175.   Plaintiffs reserve their rights to assert any other violations of NJLAD that resulted in discrimination by GCPS against A.W. and R.M.

176.   By retaliating against Plaintiffs, GCPS violated Plaintiffs' legal rights under the NJLAD with malice and reckless abandon.

177.    As a direct and proximate result of GCPS's failure to comply with the NJLAD, Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter Judgment against Defendants GCPS and NJDOE as follows:

A.    Compensatory damages in an amount in excess of $400,000.00;

B.    The relief requested in the Due Process case, including without limitation reimbursement for the private placement of A.W. and R.M. at CLS, compensatory education, and reimbursement for costs of Dr. Kay's IEE;

C.    A mandate that GCPS implement policies to prevent and prohibit discrimination based on disability in compliance with the NJLAD;

D.    Punitive damages, to the extent allowed under the NJLAD, in an amount to be determined by this Court;

E.    That Plaintiffs are prevailing parties on the issues herein and therefore are entitled to reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees and costs; and

F.    Such other and further relief as this Court deems equitable and just.

Dated:  July 25, 2019                    Respectfully submitted,

                                         By: /s/ *Robert C. Thurston*
                                         Robert C. Thurston, Esq.
                                         Thurston Law Offices LLC
                                         Robert C. Thurston, Esq.
                                         100 Springdale Road A3
                                         PMB 287
                                         Cherry Hill, NJ 08003
                                         Telephone: (856) 335-5291
                                         Email: rthurston@schoolkidslawyer.com

                                         Attorney for Plaintiffs



**EXHIBIT A**

## *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

**FINAL DECISION GRANTING RESPONDENT'S MOTION FOR SUMMARY DECISION AND DENYING PETITIONER'S CROSS-MOTION FOR SUMMARY DISPOSITION**

**(CONSOLIDATED)**

**K.K.[1] ON BEHALF OF MINOR CHILD A.W.,**           OAL DKT. NO. EDS 8360-18

      Petitioner,                                                  AGENCY DKT. NO. 2018-28026

          v.

**GLOUCESTER CITY BOARD OF EDUCATION,**

      Respondent.

_____

**K.K. ON BEHALF OF MINOR CHILD R.M.,**           OAL DKT. NO. EDS 8361-18

      Petitioner,                                                  AGENCY DKT. NO. 2018-28027

          v.

**GLOUCESTER CITY BOARD OF EDUCATION,**

      Respondent.

_____

---

[1] Respondent-counsel refers to petitioner as "K.K.M" but these matters were transmitted to OAL with petitioner listed as "K.K."  These four docketed matters are hereby consolidated.

**K.K. ON BEHALF OF MINOR CHILD R.M.,**          OAL DKT. NO. EDS 9245-18

      Petitioner,          AGENCY DKT. NO. 2018-28147

          v.

**GLOUCESTER CITY BOARD OF EDUCATION,**

      Respondent.

---

**K.K. ON BEHALF OF MINOR CHILD A.W.,**          OAL DKT. NO. EDS 9247-18

      Petitioner,          AGENCY DKT. NO. 2018-28146

          v.

**GLOUCESTER CITY BOARD OF EDUCATION,**

      Respondent.

---

      **Robert C. Thurston**, Esq.  (Thurston Law Offices, LLC), for petitioner

      **Victoria S. Beck**, Esq.  (Parker McCay, P.A.), for respondent

Record Closed:  June 7, 2019          Decided:  June 25, 2019

BEFORE **JEFFREY N. RABIN**, ALJ:

## STATEMENT OF THE CASE

Petitioner, K.K., on behalf of minor child, A.A., has appealed the findings by respondent, Gloucester City Board of Education (Board), with petitioner claiming that the Board had denied students A.W. and R.M. a free appropriate public education (FAPE) and failed to produce student records.  Petitioner seeks compensatory education for A.W. and R.M.

## PROCEDURAL HISTORY

On November 19, 2017, petitioner filed two due process petitions on behalf of A.W. and R.M.[2]

On June 13, 2018, petitioner filed petitions docketed as EDS 8360-18 and EDS 8361-18, which were transmitted to the Office of Administrative Law ("OAL") and filed on June 13, 2018, as contested cases.  N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13.

On June 29, 2018, petitioner filed petitions docketed as EDS 9245-18 and EDS 9247-18, which were transmitted to the Office of Administrative Law ("OAL") and filed on June 29, 2018, as contested cases.  Ibid.

On September 5, 2018, respondent filed a Notice of Motion for Summary Decision for EDS 8360-18, EDS 8361-18, EDS 9245-18 and EDS 9247-18, with accompanying briefs.  On September 24, 2018, petitioner submitted a responsive brief to respondent's motions, and filed a Notice of Cross-motion for Summary Disposition. Respondent filed a reply brief on October 2, 2018.[3]

Oral argument on the motions for summary decision was held on October 30, 2018.  Telephone hearings were held on January 17, February 11 and April 3, 2019, and the record remained open for the submission of additional documentation. No additional documentation was received, and the record closed on May 30, 2019.

## FACTUAL DISCUSSION AND FINDINGS OF FACT

Based upon the parties' briefs and oral arguments, and for the purpose of deciding the motion to dismiss, I **FIND** the following:

---

[2] Both of these petitions, docket numbers EDS 18462-17 and EDS 18461-17, remain pending before the Honorable Judge Lisa James-Beavers, ALJ.
[3] Petitioner briefs refer to "petitioner's motion for Summary Disposition" and respondent's "cross-motion for Summary Decision."  The first motion was filed by respondent, and therefore petitioner's motion for Summary Decision has been considered the cross-motion in this matter.

1. A.W. and R.M. lived with their birth mother, B.W., and were domiciled in her home town of Gloucester City, NJ, and were registered in the Gloucester City School District for the 2013-14 school year. The children were subsequently entered into the foster care system, and continued attending school in Gloucester City.

2. Petitioner, K.K., obtained Kinship Legal Guardianship over A.W. and R.M. on May 16, 2017.  K.K. was not a resident of Gloucester City, and was advised by the Board that the children needed to be transferred to petitioner's district of residence.

3. Petition appealed the Board's decision, and the Honorable Lisa James-Beavers granted respondent's cross-motion for Summary Decision in OAL Dkt. no. EDU 02505-18, holding that A.W. and R.M. were not entitled to attend school in the Gloucester City School District because they had become domiciled with petitioner K.K., who was not domiciled in Gloucester City. The Commissioner of Education upheld Judge James-Beavers' decision.

## LEGAL ANALYSIS AND CONCLUSION OF LAW

The issue is whether either party is entitled to a summary decision in the within matter, or whether a full hearing should be held.

Summary decision may be granted when the papers and discovery that have been filed show that there is no genuine issue as to any material fact challenged and the moving party is entitled to prevail as a matter of law.  N.J.A.C. 1:1-12.5(b).  No evidentiary hearing need be held if there are no disputed issues of material fact.  Frank v. Ivy Club, 120 N.J. 73, 98, cert. denied, 498 U.S. 1073 (1991).  "When the evidence is so one-sided that one party must prevail as a matter of law, the [tribunal] should not hesitate to grant summary [decision].'  Della Vella v. Bureau of Homeowner Protection, OAL Dkt. No. CAF 17020-13, 2014 WL 1383908 (N.J.Adm. 2014)(quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)).

Further, the non-moving party has the burden "to make an affirmative demonstration . . . that the facts are not as the movant alleges." Spiotta v. William H. Wilson, Inc., 72 N.J. Super. 572, 581 (App.Div. 1962). This requirement, however, does not relieve the moving party from having to initially establish in its moving papers that there was no genuine issue of fact and that they were entitled to prevail as a matter of law. It is the "movant's burden to exclude any reasonable doubt as to the existence of any genuine issue of fact." Conti v. Board of Education, 286 N.J.Super. 106 (App. Div. 1995) (quoting Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74 (1954)).

Both parties have filed motions for a summary disposition in this matter, and therefore both parties are in agreement that there are no genuine issues of fact which would require a full due process hearing. As there are no genuine issues of fact, this matter is ripe for a summary decision. Additionally, there is still an open underlying due process matter involving the same issues and the same two students that remains before Judge Beavers.

Petitioner has asserted that petitioner's residency is irrelevant, and that the two minor children are entitled to remain in the Gloucester City School District as a result of "stay-put." Petitioner further asserts that Judge Beavers' residency ruling does not remove respondent's obligation to provide the children with a FAPE, and that respondent must still fulfill petitioner's document requests. Respondent has asserted that A.W. and R.M. have not been entitled to attend school in the Gloucester City School District since the date that petitioner became the legal guardian of the children.

Petitioner, however, has failed to make a case that "stay-put" is applicable in the within matter. Petitioner has provided no information as to where A.W. and R.M. currently go to school, or information regarding the current IEP, if there is one, or in which school the most recent IEP stated that A.W. and R.M. must be schooled. Petitioner failed to provide any evidence that the Board has attempted to move A.W. and/or R.M. to another school during the pendency of her underlying due process petition before Judge Beavers. Accordingly, even if "stay-put" is applicable, petitioner has not made an assertion as to where she believes these minor students should be schooled, nor what terms and conditions are applicable to that education pursuant to any IEP. Additionally, these are

issues that are still available for adjudication in the underlying due process matter which remains open at OAL before Judge Beavers.

Further, the relief sought by petitioner is for the Board to produce certain records requested by petitioner. This does not fall under one of the enumerated topics for requesting a due process hearing, as set out in 20 U.S.C. §1415(b)(1) and N.J.A.C. 6A:14.2.7(a). Those statutes allow a due process hearing "when there is a disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free and appropriate public education, or disciplinary action."  N.J.A.C. 6A:14.2.7(a). As set forth in 34 C.F.R. 300.507, due process petitions may be filed on matters "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child."

Respondent correctly argues that petitioner did not file this matter under one of these categories, but rather has asserted a cause of action claiming a violation of the Family Education Rights and Privacy Act (FERPA). Despite petitioner attempting to characterize her petition as a violation of the Individuals with Disabilities Education Act (IDEA), her seeking of special service charges for failure to produce certain documents does not fall under the topics for requesting a due process hearing. See D.O. and M.O. v. Jackson Township Board of Education, EDS 14390-15 (March 21, 2016), in which the Honorable Judge John Kennedy ruled that "[n]either N.J.A.C. 6A:14-2.7(a) nor 34 C.F.R. 300.507 provide that a demand for providing copies of student's records may be the subject of a due process hearing."

The proper course of action for a challenge of an alleged denial of a document request made pursuant to FERPA would be filing a complaint with the Family Policy Compliance Office (FPCO) at the United States Department of Education. Petitioner has acknowledged that this is the proper course of action, and apparently sought relief from the FPCO. It is clear that petitioner is unhappy with the long delays she is experiencing from FPCO, and thus has chosen to recharacterize the within due process petition as a challenge under IDEA for denial of FAPE. Similarly, it appears that petitioner is unhappy with the response of Judge Beavers and the speed at which discovery was being

delivered by respondent, and therefore has chosen to file duplicative petitions with OAL, despite these issues being addressed in petitioner's underlying due process petition.

The determinative factor in the within matter is that on August 28, 2018, it was determined in the related residency appeal, K.K.M. o/b/o R.M. and A.W. v. Gloucester City Board of Education, Dkt. No. EDU 2505-18, that petitioner was not domiciled in the Gloucester City School District, and had not been since May 16, 2017, when petitioner obtained Kinship Legal Guardianship over A.W. and R.M. As the claims in the within matter post-dated May 16, 2017, petitioner's claims cannot be sustained. Because petitioner was no longer domiciled in the Gloucester City School District, and therefore A.W. and R.M. were not domiciled in the Gloucester City School District, respondent Board was not responsible for providing FAPE to A.W. and R.M. See N.J.A.C. 6A:14-1.3, which held that the district board of education for a child is the school district of residence. If a child is not domiciled within a district for residency purposes, that school district is not responsible for providing FAPE. See Moorestown Twp. Bd. of Educ. v. S.D., 811 F. Supp. 2d 1057, 1068-70 (D.N.J. 2011); Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005).

Because these four cases filed by petitioner were duplicative of the underlying due process petition still before Judge Beavers, and because A.W. and R.M were not domiciled in Gloucester City as of May 16, 2017, and therefore were not owed FAPE by respondent, summary disposition of this case in favor of respondent is proper. As stated herein, "When the evidence is so one-sided that one party must prevail as a matter of law, the [tribunal] should not hesitate to grant summary [decision].' Della Vella, Ibid.

Accordingly, I **FIND** that there are no genuine issues of fact which would require a due process hearing, and that this matter is ripe for a summary decision. I **FIND** that petitioner failed to show that "stay-put" was applicable to the within set of circumstances. I **FIND** that petitioner's claims for relief post-dated May 16, 2017, when petitioner became legal guardian of A.W. and R.M., and that as of that date respondent was no longer responsible for providing A.W. and R.M. with FAPE.

Therefore, I **CONCLUDE** that respondent must prevail as a matter of law, and that respondent's motion for summary decision must be **GRANTED**, and that petitioner's cross-motion for summary disposition must be **DENIED**.

## ORDER

I hereby **ORDER** that respondent's motion for summary decision is **GRANTED**, and this matter is hereby **DISMISSED**.  Petitioner's motion for summary disposition is **DENIED**.

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2018) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States.  20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2018).  If the parent or adult student feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education Programs.

June 25, 2019
DATE

**JEFFREY N. RABIN**, ALJ

Date Received at Agency

Date Mailed to Parties:

JNR/dw

**APPENDIX**

**EXHIBITS**

**For petitioner:**

1. Responsive brief and cross-motion, dated September 24, 2018

**For respondent:**

1. Motion and brief, dated September 5, 2019

2. Reply brief, dated October 2, 2018