NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| K. K.-M., *individually and as Kinship Legal Guardian of the Minor Children A.W. and R.M.*, | : : : : : | Civil No. 19-15808 (RBK/KMW) |
| Plaintiff, | : : | **OPINION** |
| v. | : : | |
| GLOUCESTER CITY BOARD OF EDUCATION d/b/a/ GLOUCESTER CITY PUBLIC SCHOOLS | : : : | |
| Defendant. | : : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion for Summary Judgment (Doc. No. 19) filed by Defendant Gloucester City Board of Education (the "District") and the Motion for Summary Judgment (Doc. No. 20) filed by Plaintiff K.K.-M. The focus of this lawsuit is Plaintiff's challenge to the adverse decision of an Administrative Law Judge ("ALJ") on her claims brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. For the reasons set forth below, the District's Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

I.     **BACKGROUND**

       **A.  The IDEA Statutory Framework**

In exchange for federal funding, the IDEA requires states to guarantee a free and appropriate public education ("FAPE") to all children with disabilities. 20 U.S.C. § 1412(a)(1). A FAPE "consists of

1

educational instruction specially designed to meet the unique need of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89 (1982). If the state is unable to provide a FAPE, the state must compensate the child's parents for the cost of attendance at a private school that can. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).

To provide a FAPE, school districts must work with the child's parents to design and implement an individual education program ("IEP"), "which is a program of individualized instruction for each special education student." *Id.* The IEP "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (citing 20 U.S.C. § 1414(d)(1)(A)).

In addition to providing a FAPE, the IDEA also imposes a number of procedural requirements upon school districts. These include providing parents of children with disabilities the opportunity to review their children's education records, 20 U.S.C. 1415(b)(1), and evaluating students prior to providing them with special education services, 20 U.S.C. § 1414(a).

Parents may challenge the adequacy of an IEP or seek redress for other violations of the IDEA by initiating an administrative "impartial due process hearing." 20 U.S.C. § 1415(f). At this hearing, all parties have "the right to counsel, the right to present evidence, and the right to cross-examine witnesses." *Ridley*, 680 F.3d at 270. "Any party aggrieved by the findings and decision" made at the administrative due process hearing may then bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

While a plaintiff alleging a denial of a FAPE may seek substantive relief, such as compensatory education or tuition reimbursement, a plaintiff alleging a procedural violation

divorced from any FAPE denial "may only seek injunctive relief for prospective compliance." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010). However, "[i]n some cases, a procedural violation may rise to the level of a denial of a FAPE, entitling the plaintiff to compensatory education or tuition reimbursement." *Id.* A procedural violation amounts to a denial of a FAPE if it "'(i) impeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of the educational benefit.'" *Id.* at 67 (quoting 34 C.F.R. § 300.513(a)(2)).

### B.  Factual and Procedural Background

A.W. and R.M. are high school students with disabilities who are eligible for special education and related services. (Doc. No. 20-1 ("Pl. SUMF") at ¶¶ 2–4). Previously, A.W. and R.M. lived with their birth mother in Gloucester City, New Jersey, and were registered in the Gloucester City School District. (Doc. No. 19-13 ("HD") at 4). But since September 2015, the children have been residing with K.K.-M. at an address outside the jurisdiction of the District, and a May 16, 2017 court order awarded K.K.-M. Kinship Legal Guardianship ("KLG") over A.W. and R.M. *K.K-M. ex rel. A.W. v. Bd. of Educ. of City of Gloucester City*, 229 A.3d 210, 212 (N.J. Super. Ct. App. Div. 2020).

In October 2017, the District informed K.K.-M. that A.W. and R.M. should be enrolled in the school district in which K.K.-M. resides. (*Id.*). In January 2018, K.K-M. appealed this determination, and her appeal was set before New Jersey Office of Administrative Law ("OAL") ALJ Lisa James-Beavers under docket number EDU 2505-18. *K.K.-M. ex rel. A.W. v. Bd. of Educ. of the City of Gloucester City*, No. EDU 2505-18, 2018 N.J. Agen. LEXIS 944, at *15–16 (O.A.L. Aug. 28, 2018). On August 28, 2018, ALJ James-Beavers issued a decision finding that A.W. and

R.M. were not entitled to attend school in the District as of May 16, 2017, and the Commissioner of Education affirmed on October 4, 2018. (*Id.* at \*1–10). K.K.-M. appealed to the Appellate Division of the New Jersey Superior Court, which affirmed the Commissioner's decision on March 10, 2020. *K.K.-M.*, 229 A.3d at 216. A.W. and R.M. remained enrolled in the District for the 2017-18 and the 2018-19 school years. (Pl. SUMF at ¶ 6).

Parallel to her appeal of the District's residency determination, on November 20, 2017, K.-K.M. filed separate requests for due process hearings on behalf of A.W. and R.M., creating OAL Case Nos. EDS 18461-17 and EDS 18462-17, which were consolidated and set before ALJ James-Beavers. (Doc. No. 1 at ¶ 11). In these cases, K.K.-M. invoked the "Stay Put" provision of the IDEA in an attempt to force the District to maintain A.W. and R.M.'s IEPs during the pendency of all special education proceedings. (*Id.* at ¶¶ 12–25).

Prior to filing these due process complaints, on November 18, 2017, K.K.-M.'s counsel sent the District's counsel letters demanding access to A.W. and R.M.'s educational records. (Doc. No. 20-3 at 1–12). On December 1, 2017, the District produced records that it believed were responsive to Plaintiff's demand. (*Id.* at 15–16). On February 7, 2018, K.K.-M.'s counsel responded, identifying numerous alleged deficiencies in the District's production. (*Id.* at 17–30). Unable to resolve the records production dispute, on May 14, 2018, K.K.-M. filed due process petitions alleging that the District's failure to produce complete educational records for A.W. and R.M. violated the IDEA, creating Case Nos. EDS 8360-18 and EDS 8361-18. (Doc. No. 19-3; Doc. No. 19-4).

Meanwhile, on April 17, 2018, Judge James-Beavers entered an order requiring the District to provide independent educational evaluations ("IEEs") for A.W. and R.M. (Doc. No. 20-3 at 50–61). On May 2, 2018, the District sent K.K.-M. letters inviting her to an "Identification/Evaluation

Plan meeting," apparently in preparation to conduct its own evaluations of A.W. and R.M. (*Id.* at 62). After a series of disputes about these proposed evaluations by the District and the IEEs ordered by Judge James-Beavers, on May 29, 2018, K.K.-M. filed two more due process complaints alleging that the District's actions with respect to the evaluations also constituted a violation of the IDEA. (Doc. No. 19-5; Doc. No. 19-6). These complaints created Case Nos. EDS 9245-18 and EDS 9247-18.

Case Nos. EDS 8360-18, EDS 8361-18, EDS 9245-18, and 9247-18, were all consolidated and set before ALJ Jeffrey N. Rabin. In September 2018, the parties cross-moved for summary disposition of these consolidated cases. (HD at 3).

### C. The ALJ's Decision

On June 25, 2019, ALJ Rabin issued a decision granting the District's motion for summary disposition and denying K.K.-M.'s. (HD at 8). For ALJ Rabin, the "determinative factor" was ALJ James-Beaver's determination in Case No. EDU 2505-18 that A.W. and R.M. had not been domiciled in the District since K.K.-M. obtained KLG over them in May 2017. (*Id.* at 7). Noting that "[i]f a child is not domiciled within a district for residency purposes, that school district is not responsible for providing FAPE," he found that the circumstances underlying K.K.-M.'s due process complaints could not constitute a violation of the IDEA because they occurred after the school district's IDEA obligations to A.W. and R.M. terminated. (*Id.* at 7). Based on that finding, he dismissed all four of K.K.-M.'s due process complaints. (*Id.* at 8).

### D. Proceedings in This Court

Plaintiff filed suit in this Court on July 25, 2019, seeking to reverse ALJ Rabin's decision and bringing claims under the IDEA, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 705, and the New Jersey Law

Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq*. On June 26, 2020, Plaintiff and the District cross-moved for summary judgment. (Doc. Nos. 19, 20). These motions are now fully briefed and ripe for decision.

## II.   LEGAL STANDARD

When reviewing an administrative determination in an IDEA case, "the District Court applies a modified version of de novo review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Shore Reg'l High School Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). If the district court departs from the ALJ's factual findings, "it is obliged to explain why." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003). When the parties decline to present new evidence, the district court will decide the case based on the administrative record on a motion for summary judgment. *M.S. v. Randolph Bd. of Educ.*, No. 18-13029, 2019 WL 4785742, at *7 (D.N.J. Sept. 30, 2019) (citing *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003)).

## III.   DISCUSSION

There are three main issues before the Court: (1) whether ALJ Rabin's finding that A.W. and R.M.'s residency controls this case was correct; (2) whether the District is liable for ALJ Rabin's alleged violation of the IDEA's "45-day rule"; and (3) whether the Court may hear Plaintiff's claim brought pursuant to the NJLAD. The Court addresses each in turn.

### A.  Residency

As ALJ Rabin found, A.W. and R.M.'s residency is the key to this case. While the IDEA requires states to provide "all children with disabilities residing in the State" a FAPE, it allows

6

states a great deal of flexibility as to how to actually implement the act's requirements. 20 U.S.C. 1412(a)(1)(A); 20 U.S.C. § 1414(d)(2)(A). New Jersey has chosen to delegate responsibility for providing a FAPE to the "school district of residence" for each child with disabilities in the state. N.J.A.C. 6A:14–1.1(d); 6A:14–1.3. As such, ALJ Rabin was correct to find that school districts are not responsible for providing a FAPE to students who do not reside within their boundaries. *See Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1068 (D.N.J. 2011) (noting that "residency, rather than enrollment, trigger's a district's FAPE obligations"); *see also A.P. ex rel. E.F. v. Lower Merion Sch. Dist.*, 294 F. Supp. 3d 406, 410 (E.D. Pa. 2018) (explaining that "the residency issue must be resolved to vindicate the federally granted right to FAPE").

Plaintiff does not contest that A.W. and R.M. have not been residents of the District since May 2017. Thus, the District has not been obliged to provide A.W. and R.M. a FAPE since that time. And because the District's conduct at issue in this case took place after its FAPE obligations to the children terminated, there is no possibility that those actions denied A.W. and R.M. their right to a FAPE, meaning that those actions cannot entitle Plaintiff to any relief under the IDEA. *Fry v. Napoleon Comm. Schs.*, 137 S. Ct. 743, 754 (2017) ("[S]aid in Latin: In the IDEA's administrative process, a FAPE denial is the *sine qua non*.").

Nevertheless, Plaintiff insists in that the District is still liable under the IDEA, relying on *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488 (3d Cir. 2012). (Doc. No. 20-6 at 25–27). In *D.F.*, the plaintiff filed a due process petition seeking compensatory education for alleged IDEA violations that occurred while he resided in the jurisdiction of the defendant school district. *D.F.*, 694 F.3d at 494. But because the plaintiff moved out-of-state during the pendency of the proceedings, both the ALJ and the district court found that the case was moot. *Id.* at 494–95. However, the Third Circuit reversed, finding that the plaintiff's out-of-state move did not moot his

7

claim for compensatory education because "a school district no longer responsible for educating a child must still be held responsible for its past transgressions." *Id.* at 497.

Thus, *D.F.* stands for the proposition that an IDEA plaintiff can seek compensatory education for IDEA violations that occurred while she resided in the defendant's jurisdiction, even if she subsequently moves outside of the jurisdiction. It does not establish that the IDEA provides a remedy for acts that occurred after the plaintiff moved outside the defendant's jurisdiction. Because Plaintiff is seeking to hold the District liable for actions that occurred well after A.W. and R.M. ceased to reside in the District, *D.F.* is inapplicable, and therefore they have no claim for compensatory education.

Plaintiff also asserts that the District is barred from asserting that A.W. and R.M.'s out-of-district residency negates their claims under the doctrines of claim preclusion and issue preclusion due to a different ALJ's decision on later-filed due process petitions. (Doc. No. 20-6 at 26–27). Those cases, under OAL docket numbers EDS 08837-19 and EDS 08838-19, concern alleged IDEA violations that occurred while A.W. and R.M. remained enrolled in the District during the pendency of their residency appeal. In November 2019, ALJ Judith Lieberman denied the District's motion for summary disposition, finding that A.W. and R.M. could still seek compensatory education even though they no longer resided in the District. (Doc. No. 20-5 at 32–33). However, in March 2020, ALJ Lieberman issued a decision finding that the District had met all of its IDEA obligations to A.W. and R.M., and thus denied all of their claims. *K.K. ex rel. A.W.*, Nos. EDS 08837-19, 08838-19 (N.J. O.A.L. Mar. 9, 2020).

There are many problems with Plaintiff's attempt to invoke issue preclusion and claim preclusion. To start, the doctrine of claim preclusion is inapposite because this case and the case decided by ALJ Lieberman concern different underlying events. *United States v. Athlone Indus.,*

8

*Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) (explaining that for the doctrine applies to claims "arising out of the same transaction or occurrence" (internal quotation omitted)). Plaintiff's attempt to invoke issue preclusion does not fare any better. That doctrine "acts to prevent relitigation when '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'" *Reaves v. Pa. Bd. of Probation and Parole*, 580 F. App'x 49, 53 (3d Cir. 2014) (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995)). ALJ Lieberman's finding that A.W. and R.M. could seek compensatory education from the District for acts that took place after they moved out-of-district was not "essential" to her judgment, as she ultimately found that A.W. and R.M. are not entitled to compensatory education. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006) (noting that issue preclusion does not apply to findings "that were unappealable by virtue of being incidental to a decision"). Further, ALJ Lieberman's ruling does not appear to be "final", as Plaintiff is presently attempting to appeal it to this very Court. (Doc. No. 20-6 at 26 n.1).

In any event, ALJ Lieberman's finding has no preclusive effect in this case, leaving the District free to defend ALJ Rabin's decision on its own terms. As explained above, that decision was correct, and thus all of Plaintiff's claims premised on an IDEA violation or a denial of FAPE must be dismissed.[1]

### B.  45-Day Rule

---

[1] This dismissal applies to K.K.-M.'s claims under the ADA and Section 504, as those claims appear to be solely premised on a FAPE denial stemming from the District's supposed IDEA violations. (*See* Doc. No. 20-6 at 35 ("Since [the District's] actions are a denial of FAPE to A.W. and R.M., they are entitled to relief as a matter of law under §504."); *id.* at 37 ("Since [the District's] actions are a denial of FAPE to A.W. and R.M., they are entitled to relief as a matter of law under the ADA.").

Under the IDEA, once a parent files a due process complaint, the school district or other agency has 30 days to resolve the complaint prior to the initiation of a due process hearing. 34 C.F.R. § 300.510(b)(1). Once the 30-day resolution period ends, the due process petition  must be decided within 45 days, unless the hearing officer grants adjournments requested by either party. 34 C.F.R. § 300.515(a), (c). Plaintiff contends that this "45-day rule" was violated in this case because 362 days elapsed between the end of the 30-Day resolution period and the issuance of ALJ Rabin's decision, a delay "mostly caused by ALJ Rabin's delays and *sua sponte* adjournments." (Doc. No. 20-6 at 25). Further, Plaintiff contends that this violation was a substantive violation of the IDEA, entitling A.W. and R.M. to compensatory education. (*Id.*).

Whatever the merits of this claim, Plaintiff does not have standing to seek redress from the District. In order to have standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1530, 1547 (2016). In order to satisfy the "fairly traceable" element of standing, the plaintiff's injury cannot be "the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). By Plaintiff's own account, it was ALJ Rabin and his *sua sponte* adjournments that caused the 45-day rule violation, not the District. Because the District is not accountable for ALJ Rabin's case management decisions, the 45-day rule violation is not fairly traceable to its conduct, meaning that Plaintiff lacks standing to bring this claim in this case.

### C. NJLAD

Plaintiff's remaining claim is brought under the NJLAD. (Doc. No. 1 at ¶¶ 166–177). The Court does not have original jurisdiction over this claim and may only hear it through the Court's supplement jurisdiction under 28 U.S.C. § 1367. In this circuit, when all federal claims are

dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted). As the Court is granting the District summary judgment on all of Plaintiff's federal law claims, and as the Court lacks any affirmative justification for retaining jurisdiction, Plaintiff's NJLAD claim must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the District's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and ALJ Rabin's decision is **AFFIRMED**. An Order follows.


Dated:  8/25/2020                                        /s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge

11